```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

AUNDREY L. GREEN,              :
                               :
          Plaintiff,           :   HONORABLE JOSEPH E. IRENAS
                               :   CIVIL ACTION NO. 04-0007 (JEI)
     v.                        :
                               :            OPINION
NEW JERSEY STATE POLICE;       :
JOSEPH J. SANTIAGO;            :
CRAIG BROWN; FREDERICK         :
FIFE; JOHN N. SCHUSLER;        :
ROBERT PARRY and TROOPER       :
GIULIANO;                      :
                               :
          Defendants.          :
```

**APPEARANCES:**

VINCENT JAMES SANZONE, JR., ESQ.
277 N. Broad Street, 2nd Floor
P.O. Box 261
Elizabeth, N.J. 07207
        Counsel for Plaintiff

ZULIMA V. FARBER, ATTORNEY GENERAL OF NEW JERSEY
By: Kenneth B. Goodman, Esq.
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, N.J. 08625
        Counsel for Defendants

**IRENAS**, Senior District Judge:

    Plaintiff Aundrey Green ("Green") brings claims pursuant to 42 U.S.C. § 1983,[1] asserting that Defendants violated his

---

[1] Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

constitutional rights by using excessive force against him during his arrest and then attempting to cover-up the incident.  Before the Court is Defendants' Motion for Summary Judgment.[2]  For the reasons set forth below, summary judgment will be granted in part and denied in part.

## I.

On the night of April 22, 2002, New Jersey State Troopers Defendants Robert Parry ("Officer Parry") and Frederick Fife ("Officer Fife") pulled over Green for speeding.[3]  During the traffic stop, Green did not have any identification and gave the police a false name when asked.  Officer Parry testified that he asked Green to exit his car at that time because Parry smelled alcohol in the car.[4]  After Green got out of the car, he was arrested for driving under the influence.[5]  While it does not appear from the record that a field sobriety test was conducted, Green does not dispute that his blood alcohol level (measured within a few hours of his arrest) was over the legal limit in New

---

[2] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

[3] Defendants assert that Green was traveling at a minimum of 105 miles per hour.  Green denies that he was driving that fast, but admits that he was speeding and that he subsequently pled guilty to speeding.  (Green Dep. at 96)

[4] Green's girlfriend and her two young children were also in the car and remained there after Green got out.

[5] Officer Parry reported that he also arrested Green for giving a false name, which Officer Parry discovered to be false because of a pay stub he found in Green's possession.  Green's girlfriend may have also told the police Green's real name.

Jersey.[6]  Green also tested positive for marijuana.

Green was handcuffed and placed in the back of the police car.  Up until this point he had complied with the police officers' directions and was not verbally or physically combative.  However, once in the back of the car, Green's behavior changed.  Green complained that he needed to go to the bathroom.  Officer Parry told Green that he would have to wait until they got to the police station.  Green admits that he then slipped his feet through his arms so that his handcuffed hands were in the front of his body instead of behind his body.[7]  He further admits that he unzipped his pants with the intention of urinating in the back of the police car.  (Green Dep. at 128)

Then, according to Green's version of events, Officer Parry opened the passenger door and grabbed Green by the throat, "choking" him.  (Id. at 136)  Green resisted by leaning away while Officer Parry ordered Green out of the car.[8]  When Green did not cooperate, either Officer Parry or Officer Fife sprayed Green with mace at least two times.  The officers again ordered Green out of the car but Green admits he wedged his feet under

---

[6] Green later pled guilty to driving under the influence.

[7] For purposes of this motion, the Court takes Green's version of events-- that he never freed himself of the handcuffs-- as true.  The Court notes, however, that Defendants assert that Green freed one of his hands from the cuffs.

[8] Officer Parry testified that he grabbed Green before ordering him to exit the police car.  (Parry Dep. at 18)

the front seat of the car, pushing himself into the back of the passenger seat so that the officers could not pull him out.  (Id. at 134-35) During this time, the officers requested back-up and Defendant State Troopers Brown and Giuliano ("Officer Brown" and "Officer Giuliano" respectively) arrived shortly thereafter.

Officer Parry admits that he then punched Green and kicked him seven times while Green was still handcuffed in the back seat of the police car.[9]  (Parry Dep. at 23-24) Officer Fife admits that he too punched and kicked Green in the back seat.  (Fife Dep. at 14)  According to Green, he was punched in the face and kicked in the ribs, as well as other parts of his body.  Green also testified that Officer Fife hit Green in the head with a flashlight, causing him to bleed.[10]  Green tried to protect himself by ducking down and covering his face.[11]

Officer Brown tried to help Officers Parry and Fife subdue Green by trying to grab Green's arms and legs.  Officer Brown testified that Green punched him in the process.  Green was eventually removed from the car.

Once out of the car, Green testified that he was thrown to

---

[9]  The camera in the officers' car videotaped the confrontation.

[10]  Officer Fife admits to hitting Green with the flashlight but contends he hit Green's wrist.  Defendants assert that Green hit his head on the door of the police car.

[11]  Though Green denies that he fought back at any time, he pled guilty to aggravated assault on Officers Brown and Fife, specifically admitting under oath that he punched or kicked them.  (Defs' Ex. K at 10-11)

4

the ground, kneed in the back and kicked. According to Defendants, Green kicked Officer Fife in the knee.

The record is not clear about how the confrontation ended, but an ambulance soon arrived at the scene. Green was transported to the hospital where he was treated for two lacerations to his head, which required three stitches. He also suffered a minor abrasion to his leg.

After the incident, Defendant Schusler ("Schusler"), also a state trooper, conducted the internal investigation of the incident. He viewed the videotape of the confrontation and interviewed the officers who were present. Schusler created a report of his investigation but did not include the fact that some of the officers kicked and punched Green. None of the officers were disciplined as a result of the investigation.

Green asserts that Officers Parry, Fife, Brown and Giuliano violated his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights by using excessive force during his arrest or by failing to stop the use of excessive force; and that Schusler conspired with the other defendants to cover-up the use of excessive force.[12]

---

[12] The New Jersey State Police and Superintendent Santiago were previously dismissed as defendants to this action.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56©)). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III.

Because Green's complaint and arguments in opposition to the present motion mainly focus on the alleged Fourth Amendment

violations arising out of the excessive force claims, the Court will briefly address Green's other claims before turning to the Fourth Amendment issues.

### A.

Green makes no argument nor gives any explanation how his claims implicate any constitutional rights other than those protected by the Fourth Amendment, made applicable to the State of New Jersey through the Fourteenth Amendment. Yet Green's complaint also alleges violations of the Fifth, Sixth and Eighth Amendments. Because the record does not support claims based on any of the rights found in those amendments, Green's claims fail as a matter of law and summary judgment will be granted.

(1)

With respect to the Fifth Amendment claim, the Court is left to speculate why Green asserts his Fifth Amendment rights were violated. Even if the Court liberally interpreted the complaint as asserting that Defendants denied Green his Fifth Amendment right to counsel or infringed his right to be free from compelled self-incrimination,[13] summary judgment would still be warranted.

The Third Circuit has stated, "a plaintiff may not base a

---

[13] There is a serious question whether Green has actually asserted such claims. None of the papers submitted by Green include words such as "self-incrimination," "*Miranda*," or even "right to counsel."

§ 1983 claim on the mere fact that the police questioned the plaintiff in custody without providing *Miranda* warnings where there is no claim that the statements obtained in violation of *Miranda* were used against the plaintiff." *Renda v. King*, 347 F.3d 550, 557 (3d Cir. 2003). While there is no evidence in the record that any officer read Green his rights, there is also no evidence that any of Green's statements were ever used against him. Indeed, Green pled guilty to the aggravated assault charges that arose out of the incident on April 22, 2002, and nothing in the transcript of his plea hearing or sentencing indicates any of his statements were used against him.

Likewise, assuming Green was "interrogated" in the Fifth Amendment sense, he nevertheless had "no free-standing Fifth Amendment claim for denial of counsel during his interrogation." *James v. York County Police Dep't*, No. 05-2852, 2005 U.S. App. LEXIS 26876 at *15 (3d Cir. Dec. 8, 2005). "[V]iolations of the prophylactic *Miranda* procedures do not amount to violations of the Constitution itself. . . . the 'right to counsel' during custodial interrogation recognized in [*Miranda*] is merely a procedural safeguard, and not a substantive right." *Giuffre v. Bissell*, 31 F.3d 1241, 1256 (3d Cir. 1994).

Accordingly, summary judgment on the Fifth Amendment claim will be granted.

(2)

Summary judgment is also warranted on the Sixth Amendment claim.  The Sixth Amendment right to counsel attaches at the initiation of formal charges.  *Massiah v. United States*, 377 U.S. 201 (1964).  Thus, any potential violation of Green's Sixth Amendment rights must have occurred after criminal charges were formally initiated against him.  Yet the record is clear that Green was represented by a public defender in connection with the aggravated assault charges in this case.

Green has made no argument and put forth no evidence in support of his Sixth Amendment claim.  Indeed, all the evidence in the record suggests that Green's Sixth Amendment rights were not violated.  Accordingly, summary judgment in favor of Defendants will be granted.

(3)

The record also does not establish a violation of Green's Eighth Amendment rights.  The right to be free from cruel and unusual punishment attaches after conviction and sentence. *Fuentes v. Wagner*, 206 F.3d 335, 344 n.11 (3d Cir. 2000).  On the other hand, "[w]here, as here, the excessive force claim arises in the context of an arrest . . . it is most properly characterized as one invoking the protections of the Fourth

9

Amendment."  *Graham v. Connor*, 490 U.S. 386, 394 (1989).[14]
Accordingly, summary judgment on Green's Eighth Amendment claim
will be granted.

(4)

Lastly, without citing any particular constitutional
provision, Green asserts that Schusler and the other officers are
liable under § 1983 for conspiring with each other to cover-up
the excessive force used during Green's arrest.  Specifically,
Green asserts that Schusler intentionally omitted damaging facts
from his incident report and the other officers lied to Schusler
about what happened during Green's arrest, thereby allowing the
officers to "get away with" their misdeeds.

Because this is a § 1983 claim, the issue is what, if any,
constitutional injury did Schusler's omissions and the other
officers' lies cause Green?  "A bad police investigation is
actionable under § 1983 only if it results in a constitutional
deprivation of some right."  *Bush v. City of Philadelphia*, No.
98-0994, 1999 U.S. Dist. LEXIS 11428 at *12 (E.D. Pa. July 15,
1999).  Likewise, mere allegations of a police cover-up, without

---

[14]   For this reason summary judgment will also be granted on Green's
Fourteenth Amendment claim insofar as Green may be asserting a violation of
his substantive due process rights.  *See Graham,* 490 U.S. at 395 ("Because the
Fourth Amendment provides an explicit textual source of constitutional
protection against this sort of physically intrusive governmental conduct,
that Amendment, not the more generalized notion of 'substantive due process,'
must be the guide for analyzing [arrest by excessive force] claims.").

10

allegations of "actual deprivation [of] or damage [to]" constitutional rights, fails to "state an adequate claim for relief under section 1983." *Landrigan v. City of Warwick,* 628 F.2d 736, 742-43 (1st Cir. 1980).

In this case, Green fails to identify or put forth any evidence establishing how either the omission of certain facts from Schusler's report or the officers' lies caused him any constitutional injury. While such actions, if true, constitute improper police conduct, the mere fact that the officers may have escaped discipline does not injure Green's constitutional rights.

Green apparently asserts that because Schusler conspired with the other officers to cover-up the use of excessive force after the fact, Schusler is liable for the other officers' acts during Green's arrest. This is not the law. *See Landrigan,* 628 F.2d at 742 ("Plaintiff's theory seems to be that Angilly and Joyce, by conspiring to cover up McElroy's excessive use of force, became liable for McElroy's original tort. Plaintiff is incorrect."); *Hampton v. Hanrahan*, 600 F.2d 600, 622 (7th Cir. 1979)[15] ("persons who participate in the concealment are not ipso facto participants in the original conspiracy;" direct proof of an agreement to conceal as part of the original conspiracy is required to impose liability). Green may not bootstrap the other officers' alleged Fourth Amendment violations into a claim

---

[15] Reversed in part on other grounds by 446 U.S. 754 (1980).

11

against Schusler by merely alleging a conspiracy to cover-up the Fourth Amendment violations after the fact. Nor may Green bootstrap the other officers' alleged conspiracy to cover-up their own Fourth Amendment violations into a separate constitutional tort. *See Holt Cargo Sys. v. Delaware River Port Auth.*, 20 F. Supp. 2d 803, 843 (E.D. Pa. 1998)("Section 1983 does not, however, punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises."), *affirmed at* 165 F.3d 242 (3d Cir. 1999).

Because Green has failed to establish any constitutional injury resulting from the alleged conspiracy to cover-up the use of excessive force, summary judgment for Defendants is warranted.

**B.**

Green asserts two separate Fourth Amendment violations. First, he asserts that the officers conducted an illegal search of Green's car. Second, he asserts that the officers used excessive force or failed to stop the use of excessive force during Green's arrest.

(1)

Green asserts that the officers conducted an illegal search of the passenger compartment of his car after placing him in the

backseat of the police car.[16] However, such a search, which was incident to a lawful arrest,[17] does not violate the Fourth Amendment's prohibition of unreasonable searches. *New York v. Belton*, 453 U.S. 454, 460 (1981) ("we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.").[18]

Accordingly, no constitutional violation occurred with respect to the search of Green's car and summary judgment for Defendants is warranted.

(2)

Lastly, Green asserts that Officers Parry, Fife, Brown and Giuliano violated his Fourth Amendment rights by using excessive force or failing to stop the use of excessive force against him.

The use of excessive force during an arrest is an unlawful seizure under the Fourth Amendment. *Graham*, 490 U.S. at 395 (1989). "In deciding whether challenged conduct constitutes excessive force, a court must determine the objective

---

[16] The police found nothing incriminating in Green's car.

[17] Green does not challenge the legality of his arrest.

[18] Moreover, to the extent that Green asserted in his deposition that the pat-down of his girlfriend was illegal, Green lacks standing to assert such a claim. "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Brown v. United States*, 411 U.S. 223, 230 (1973).

13

'reasonableness' of the challenged conduct, considering 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Couden v. Duffy*, 446 F.3d 483, 496-97 (3d Cir. 2006) (quoting *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004)).  "Other factors include 'the duration of the officer's action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Id.* (quoting *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)).

Applying these factors, the Court concludes that a reasonable jury could find that the officers' actions were objectively unreasonable under the circumstances.  The undisputed facts show that Officer Parry punched and kicked Green several times while he was handcuffed in the back seat of the police car after being sprayed twice with mace.  Similarly, if a jury were to believe Green's testimony that Officer Fife hit him in the head with a flashlight, causing Green to bleed, such actions could be found excessive under the circumstances.

Further, if any one of the officers is found to have used excessive force, all of the other officers could be found to have violated Green's Fourth Amendment rights by failing to stop the

14

use of excessive force.  "[D]irect use of excessive force is not required to impose liability under § 1983. . . . [L]iability will lie if an officer had knowledge or acquiesced in a § 1983 violation."  *Garbacik v. Janson*, 111 F.App'x 91, 94 (3d Cir. 2004).

Under either theory of liability, Officers Parry, Fife, Brown and Giuliano are not entitled to qualified immunity.  The constitutional rights in question were clearly established.  A reasonable officer would know that using the alleged level of force on a handcuffed suspect was excessive.  *See Couden*, 446 F.3d at 497.  Likewise, "the duty to intervene [to stop the use of excessive force] on the part of nonsupervisory employees was clearly established [in 1997];" i.e., prior to the events giving rise to this case.  *Garbacik*, 111 F.App'x at 94.

Green has put forth sufficient evidence that his Fourth Amendment rights were violated and the Court concludes that Officers Parry, Fife, Brown and Giuliano are not entitled to qualified immunity.  Accordingly, summary judgment will be denied with respect to Green's Fourth Amendment claims arising out of the asserted use of excessive force against him.

## IV.

For the foregoing reasons, the Court will grant in part and deny in part the Motion for Summary Judgment.  Summary judgment

15

is denied with respect to Green's Fourth Amendment claim insofar as it is based on Officers Parry, Fife, Brown and Giuliano's use of excessive force or their failure to stop the use of excessive force.  Summary judgment will be granted in favor of Defendants with respect to all other claims.


Date: August  9th , 2006

                                                  s/*Joseph E. Irenas*
                                                 JOSEPH E. IRENAS, S.U.S.D.J.